OPINION
This is an accelerated appeal taken by appellant, Maria R. Horning, from a final judgment of the Domestic Relations Division of the Portage County Court of Common Pleas as to the trial court's division of marital property in a divorce proceeding.
Appellant and appellee, Robert W. Horning, were married on July 24, 1992. No children were born as issue of the marriage. Following several years of marriage, appellant filed a complaint for divorce in the trial court on August 20, 1997. Appellant alleged that she and appellee were no longer compatible. Appellee filed an answer in which he counterclaimed for divorce.
Following time for discovery, the contested divorce came on for trial on May 20 and 21, 1998. Appellant and appellee were both represented by counsel and testified at the proceedings. The parties introduced numerous exhibits relating to marital assets and liabilities.
On July 16, 1998, the trial court issued a judgment entry granting the parties a divorce based on incompatibility. In the divorce decree, the trial court divided the marital estate and allocated the parties' joint debt. The trial court further determined that neither party should receive spousal support.
On appeal, appellant asserts the following assignments of error:
 "[1.] The trial court erred and abused its discretion when it failed to adequately compensate the wife for her lingerie and clothes upon which the husband urinated, burned holes, and poured cigarette ashes.
 "[2.] The trial court erred and abused its discretion in declaring the real property situated at 733 West Main Street, Kent, Ohio, to be separate property of the husband.
 "[3.] The trial court erred and abused its discretion when it failed to award the wife an interest in the active appreciation on the real property situated at 733 West Main Street, Kent, Ohio, accrued through the parties' efforts during the course of the marriage."
Upon granting a divorce, a trial court is charged with the duty of classifying, valuing, and distributing all property of the parties, including both marital and separate property. R.C. 3105.171. With regard to those assets comprising the marital estate, the trial court is required to divide and distribute such property between the parties in an equitable manner. R.C. 3105.171(B); Holcomb v. Holcomb (1989),44 Ohio St.3d 128, 130. The trial court is necessarily vested with wide discretion in formulating an equitable distribution of marital property. Holcomb,44 Ohio St. 3d at 130; Berish v. Berish (1982), 69 Ohio St.2d 318,319. Such discretion is broad, but not unlimited.Bisker v. Bisker (1994), 69 Ohio St.3d 608, 609.
The trial court's division of marital property will not be disturbed on appeal unless the court abused its discretion. Boothv. Booth (1989), 44 Ohio St.3d 142, 144; Martin v. Martin (1985),18 Ohio St.3d 292, 294. An abuse of discretion connotes more than a mere error of law or judgment; rather, it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
In her first assignment of error, appellant claims that the trial court abused its discretion by inadequately compensating her for certain personal property that appellee either destroyed or damaged prior to her vacating the marital residence in 1997. Specifically, appellant suggests that the trial court undervalued undergarments, swimwear, and other clothes upon which appellee urinated, burned holes, and poured cigarette ashes. At trial, appellant described appellee's conduct in this manner:
 "My husband opened up my dresser drawers and urinated all over my lingerie, burned holes in my bras and underwear, urinated all over my bathing suits and dumped cigarette ashes — and filled my jackets with used cigarettes and ashes."
During his testimony, appellee conceded that he had committed these acts. Appellee indicated that he damaged appellant's undergarments while intoxicated, but he acknowledged that his actions could not be excused.
Through counsel, appellant introduced a categorized list of the destroyed and damaged clothing. For each category, appellant included an estimate of the cost for replacing the items. Appellant estimated the total replacement cost of all the clothing to be $1,381.50. Appellee introduced no evidence with regard to the value of the undergarments, swimwear, and other clothes.
The trial court addressed this issue in the divorce decree by ordering that appellant "receive $100 to cover the cost of dry cleaning and/or replacing her lingerie." The trial court offered no explanation as to how it arrived at the $100 figure or why it had discounted the $1,381.50 estimated replacement value testified to by appellant.
Appellant contends that the trial court abused its discretion by awarding her only $100 for the destroyed and damaged clothing. Appellee counters that appellant was not entitled to "replacement value" under Ohio law and that $100 was a feasible approximation of the true "market value" of the used undergarments, swimwear, and other clothes.
As an initial matter, we agree that appellant was not entitled to receive the full replacement value of the clothing. This court has previously recognized that the general rule in Ohio is that the measure of damages for injury to personal property is the difference between the fair market value of the property immediately before the loss and the fair market value of the property immediately after the loss. Akro-Plastics v. DrakeIndustries (1996), 115 Ohio App.3d 221, 226. Where the personal property is totally destroyed, the measure of damages is the reasonable market value of the personalty immediately before its destruction. Cooper v. Feeney (1986), 34 Ohio App.3d 282, 283.
When the market value of personal property can not be feasibly ascertained, a court must resort to a more elastic standard. The standard is more elastic because the court must attempt to take into account the value of the property to the owner by examining such factors as the age, condition, original cost, and replacement value of the items. Id. at 283-284.
In the case sub judice, appellant testified that $1,381.50 represented the replacement value of the garments. Since the items had obviously depreciated in value through use, the trial court did not abuse its discretion in ruling that appellant was not entitled to an award equal to their replacement value. The trial court, however, only awarded $100 to appellant for the destroyed and damaged clothing. This amount represented only 7 percent of the replacement value documented by appellant through her testimony and corresponding exhibit. The trial court gave no reasons underlying the award.
The Supreme Court of Ohio has held that "[i]n allocating property between the parties to a divorce * * *, the trial court must indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable and in accordance with the law." Kaechele v. Kaechele
(1988), 35 Ohio St.3d 93, paragraph two of the syllabus. In applying Kaechele, this court has previously observed the following:
 "[A] trial court must provide specific, clear and patent explanations of the basis for their property divisions. Omission of specific valuations of property and of the rationale behind their allocation to the individual party will lead an appellate court to find that the trial court had an insufficient basis for making its award." Bollas v. Bollas (Dec. 1, 1989), Trumbull App. No. 88-T-4089, unreported, at 2, 1989 WL 146420. See, also, Willis v. Willis (May 16, 1997), Trumbull App. No. 96-T-5549, unreported, at 4, 1997 WL 286008 (citing Bollas).
In the instant matter, the trial court ostensibly allocated a specific valuation to the clothing in question, to wit: $100. In doing so, however, the trial court did not offer any explanation whatsoever as to why it was awarding only 7 percent of the replacement value of the damaged goods. The trial court's failure to express its underlying rationale for this particular property award precludes this court from exercising meaningful appellate review. The first assignment of error has merit.
In her second assignment of error, appellant maintains that the trial court abused its discretion in declaring certain real property to be the separate property of appellee. According to appellant, she acquired a one-half interest in the land through the donative intent of her husband.
The real property in question is situated at 733 West Main Street ("Main Street property") in Kent, Ohio. A four-unit apartment building is located on the parcel of land. Appellee purchased the Main Street property on December 12, 1990 for $115,000, including a down payment of $14,742.33. The balance of the purchase price was financed through a mortgage.
The deed to the Main Street property was recorded in appellee's name only, but it was established at trial that his father contributed over half of the money toward the down payment. Moreover, although there was no formal written partnership agreement, appellee testified at trial that he and his father owned and managed the building as partners. Appellee and his father had joint control over the checking account in which rent deposits were made and out of which maintenance costs were paid. Appellee's father served as the bookkeeper.
The Main Street property was maintained as separate property even after appellee married appellant in 1992. A new deed was never executed whereby appellant was given a legal interest in the Main Street property. Appellant never had access to the aforementioned checking account established by appellee and his father. Appellee never commingled marital funds with the separate checking account established for the Main Street property.
The evidence at trial did demonstrate that appellee refinanced the property in 1994 in order to obtain a more advantageous interest rate on the mortgage. At that time, appellant initialed and signed certain documents relating to the refinancing application process. She, however, did not sign the actual promissory note. Appellee remained solely liable for the repayment of the loan.
Appellant's primary argument on appeal is that she obtained a one-half interest in the Main Street property when she and appellee were married. According to appellant, her husband expressed an intent to give her such an interest through an intervivos gift. As support for this assertion, appellant points to certain statements made by appellee during the trial. In these statements, appellee expressed his belief that a couple shares everything on an equal basis after getting married.
Upon reviewing the transcript, it is obvious that appellee was making very general statements regarding his view of marriage. When appellee was asked specifically about the Main Street property, he expressly indicated that he never intended for appellant to acquire a one-half interest in that asset:
 "Q. Did you ever indicate to your wife that you considered her to have an interest in 733 West Main Street, directly, indirectly, any way, shape, or form?
"A. No, I did not."
Appellee testified that he had purchased and managed the Main Street property in partnership with his father prior to his marriage to appellant. This arrangement continued following the marriage:
 "Q. Well, you had discussions about the property; is that correct?
 "A. Not 733 West Main. We had discussions on buying the other property, you know, when we first got married, we were making plans like most people do. She was fully aware that my father was a 50/50 partner [in the Main Street property]."
The burden of proving that property is separate under R.C. 3105.171 is upon the proponent of the claim. Peckv. Peck (1994), 96 Ohio App.3d 731, 734; Kane v. Kane
(Dec. 15, 1995), Lake App. No. 94-L-169, unreported, at 3, 1995 WL 869955. The proponent must establish the separate nature of the property by a preponderance of the evidence. Peck, 96 Ohio App.3d at 734. In this case, appellee satisfied his burden of proving that the Main Street property retained its separate character after his marriage to appellant in 1992.
Although separate property may be transformed into marital property through a gratuitous transfer, the evidence did not demonstrate that appellee ever intended to give a one-half interest in the Main Street property as an inter vivos gift to appellant. The trial court did not abuse its discretion in declaring the Main Street property to be the separate property of appellee. The second assignment is not well-taken.
In her third assignment of error, appellant posits that the trial court abused its discretion by failing to award her a share of the active appreciation of the Main Street property accrued through the parties' efforts during the marriage. According to appellant, she is entitled to a percentage of the property's appreciation in value.
The General Assembly has codified definitions of "marital property" and "separate property" in R.C. 3105.171. Marital property is defined in R.C. 3105.171(A)(3)(a):
 "`Marital property' means, subject to division (A)(3)(b) of this section, all of the following:
"* * *
 "(iii) * * * all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage[.]"
Separate property is defined in R.C. 3105.171(A)(6)(a):
 "`Separate property' means all real and personal property and any interest in real or personal property that is found by the court to be any of the following:
"* * *
 "(iii) Passive income and appreciation acquired from separate property by one spouse during the marriage[.]"[1]
The Supreme Court of Ohio has held that the plain language of R.C. 3105.17(A)(3)(a)(iii) unambiguously indicates that when either spouse makes a labor, money, or in-kind contribution that causes an increase in the value of separate property, that increase in value is deemed to be marital property. See Middendorf v.Middendorf (1998), 82 Ohio St.3d 397, 400. In doing so, the Supreme Court cited two decisions from this court wherein we interpreted R.C. 3105.17(A)(3)(a)(iii) as requiring only an expenditure or effort by either spouse, as opposed to contributions by both spouses. SeeKotkowski v. Kotkowski (May 19, 1995), Portage App. No. 94-P-0027, unreported, 1995 WL 378681; Hansen v. Hansen
(Dec. 11, 1992), Lake App. No. 92-L-052, unreported, 1992 WL 366885.
In the instant matter, there can be no doubt that any income and appreciation on the Main Street property, due to the labor, monetary, or in-kind contribution of either appellee or appellant that occurred during the marriage, would be marital property as defined by R.C. 3105.17(A)(3)(a)(iii). As marital property, such income or increase in valuation of the Main Street property would be subject to division and distribution.
In the case at bar, the parties introduced evidence at trial relating to the appreciation of the Main Street property. It was established that appellee purchased the building and land in December 1990 for $115,000. The parties subsequently married on July 24, 1992. Thereafter, appellee refinanced the mortgage on the Main Street property in 1994, thereby acquiring a new debt obligation. At the final divorce hearing in 1998, a document was introduced into evidence showing the Main Street property to have an appraised value of $165,900.
During her testimony at trial, appellant indicated that she performed numerous tasks associated with the Main Street property throughout the course of her marriage to appellee. Such tasks included answering telephonic inquiries from prospective tenants, putting up "For rent" signs, addressing tenants' complaints, and calling an exterminator when necessary. Appellant also stated that she helped to clean and repaint the apartments when tenants vacated. From appellant's perspective, she made labor and other in-kind contributions that served to increase the value of the Main Street property.
Although appellee testified at trial, counsel for the parties did not question him as to what efforts, if any, he expended to maintain and improve the condition of the Main Street property during the course of the marriage. Thus, his testimony shed little light on whether he had made labor, monetary, or in-kind contributions that helped to increase the value of the apartment building.
Appellee's father also testified during the divorce proceedings. The crux of his testimony was that he did most of the clean-up work at the apartment building and that he did not recall appellant having much involvement in maintaining the property.
Despite the fact that evidence was introduced relating to whether the Main Street property had appreciated in value through the efforts of the parties, a review of the divorce decree reveals that the trial court did not address this issue in its final judgment. If the trial court had decided whether appellant was entitled to a share of the property's increased valuation, then this court would review the decision under an abuse of discretion standard.
The trial court, however, overlooked the question of appreciation, thereby requiring us to remand the matter so that the trial court can issue a ruling. To this extent, the third assignment has merit. On remand, the trial court should address the following: (1) whether the Main Street property increased in value during the course of the marriage; and (2) whether any increase in valuation was due to the labor, monetary, or in-kind contributions of either appellant or appellee or both.
Based on the foregoing analysis, the first and third assignments of error are well-taken to the extent indicated. Accordingly, the judgment of the trial court is affirmed in part as to its finding the Main Street property to be the separate property of appellee. However, the judgment of the trial court is reversed as it relates to the valuation of appellant's destroyed and damaged clothing, and the matter is hereby remanded to the trial court for further proceedings consistent with this opinion.
 __________________________________________ JUDGE EDWARD J. MAHONEY, Ret., Ninth Appellate District, sitting by assignment.
NADER, P.J., EVANS, J., Ret., Third Appellate District, sitting by assignment, concur.
[1] Passive income is defined as "income acquired other than as a result of the labor, monetary, or in-kind contribution of either spouse." R.C. 3105.171(A)(4).