[Cite as *Williams v. Williams*, 2018-Ohio-611.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| LADONNA M. WILLIAMS | : | |
| | : | |
| *Plaintiff-Appellant* | : | Appellate Case No. 2017-CA-47 |
| | : | |
| v. | : | Trial Court Case No. 2015-DR-628 |
| | : | |
| JOHN M. WILLIAMS, SR. | : | (Domestic Relations Appeal) |
| | : | |
| *Defendant-Appellee* | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 16th day of February, 2018.

. . . . . . . . . . .

GREGORY K. LIND, Atty. Reg. No. 0055227, 20 South Limestone Street, Suite 340, Springfield, Ohio 45502
      Attorney for Plaintiff-Appellant

STACEY R. PAVLATOS, Atty. Reg. No. 0012392, 700 East High Street, Springfield, Ohio 45505
      Attorney for Defendant-Appellee

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} Plaintiff-appellant LaDonna Williams appeals from a Final Judgment and Decree of Divorce entered by the Clark County Court of Common Pleas, Domestic Relations Division. She challenges the trial court's distribution of marital assets and its award of attorney fees to John Williams. For the following reasons, the judgment of the trial court will be affirmed.

## I. Facts and Procedural History

{¶ 2} The parties were married in November 1993. They have no children as a result of their marriage. Ms. Williams filed a complaint for divorce on August 10, 2015 and Mr. Williams filed an answer. Hearings were conducted over the course of six days beginning in September 2016 and concluding in April 2017.

{¶ 3} Of relevance hereto, the trial court awarded a vacation timeshare membership with Globequest Travel Club to Ms. Williams. The trial court ordered her to reimburse Mr. Williams for his one-half share of that membership. The trial court also awarded Mr. Williams a portion of Ms. Williams' retirement annuity. Finally, the trial court ordered Ms. Williams to pay Mr. Williams' attorney's fees in the amount of $24,308.23.

{¶ 4} Ms. Williams appeals.

## II. Globequest Timeshare

{¶ 5} Ms. Williams' first assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION BY AWARDING THE DEFENDANT HALF INTEREST IN THE PARTIES' TRAVEL CLUB WITH

GLOBEQUEST

{¶ 6} Ms. Williams contends that the trial court erred in awarding Mr. Williams any interest in the Globequest timeshare. In support, she contends Mr. Williams signed a waiver of his interests thereto. Alternatively, she contends that he should be awarded no more than one-third of the timeshare as her daughter, Pamela Mahaney, is also a one-third owner of the timeshare.

{¶ 7} "In Ohio, marital property is defined as any real property, personal property, or interest therein that is owned by either or both spouses that [was] acquired by either or both spouses during the course of their marriage." *Smith v. Smith*, 182 Ohio App. 3d 375, 2009-Ohio-2326, 912 N.E.2d 1170, ¶ 15 (2d Dist.), citing R.C. 3105.171(A)(3)(a). A trial court has broad discretion when dividing marital property. *Bisker v. Bisker*, 69 Ohio St.3d 608, 609, 635 N.E.2d 308 (1994), citing *Berish v. Berish*, 69 Ohio St.2d 318, 432 N.E.2d 183 (1982). Thus, absent an abuse of that discretion, a reviewing court will uphold the trial court's division of that property. *Smith* at ¶ 16. An abuse of discretion occurs when the trial court's judgment is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 8} As noted, the trial court awarded the timeshare to Ms. Williams. The trial court, however, determined that Mr. Williams was entitled to one-half of the equity in the timeshare as Mahaney did not contribute to the purchase thereof and as all payments were made from marital funds. The trial court further found that Mr. Williams did not release any interest in this timeshare

{¶ 9} The evidence submitted during the hearing demonstrates that in October 2010, Ms. Williams, Mr. Williams and Mahaney executed a membership application with

Globequest Travel Club for the purchase of an interest in a vacation timeshare. The purchase price was $12,750, and a down payment was made in the sum of $3,825. In conjunction with the application, all three executed a promissory note in the amount of $8,925.

{¶ 10} Ms. Williams claims that her Exhibit 15 demonstrates that Mr. Williams relinquished all rights to the timeshare. That document purports to be a copy of a memorandum regarding a transfer of equity wherein Mr. Williams indicates he desires to transfer his equity in a Smoky Mountain timeshare to a Nevada timeshare being purchased by Mahaney and Ms. Williams. The memorandum further states that Mr. Williams did not want his "name on file as owner" of the Nevada timeshare.

{¶ 11} We agree with the trial court that the evidence does not support a finding of waiver as to the Globequest timeshare. The Exhibit 15 memorandum, dated April 26, 2005, was executed more than five years prior to the purchase of the Globequest timeshare. Further, from our reading of the memorandum, Mr. Williams did not waive his equity interest in the Nevada timeshare. Instead, he merely stated that he did not want his name on the title to the timeshare. In any event, the memorandum has no connection to the subsequent Globequest purchase.

{¶ 12} We also note Ms. Williams admitted that the down payment and all installment payments on the promissory note were made from joint marital funds. Ms. Williams further admitted that Mahaney did not contribute any funds to the purchase of the timeshare, nor did she make any payments to compensate Mr. or Ms. Williams for her share of the purchase. Thus, we cannot say that the trial court abused its discretion with regard to the requirement that Ms. Williams reimburse Mr. Williams for his one-half share

of the monies paid for the timeshare.

{¶ 13} The first assignment of error is overruled.

### III. Pension Distribution

{¶ 14} The second assignment of error asserted by Ms. Williams states as follows:

THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING THE DEFENDANT AN AMORTIZED DISTRIBUTION OF THE PLAINTIFF'S ASSURANT PENSION PLAN.

{¶ 15} Ms. Williams contends that the trial court erred by awarding Mr. Williams an interest in her pension plan. In support, she contends that he waived his right to that interest. She alternatively argues that the trial court erred with regard to the appropriate amount of his interest.

{¶ 16} We first reject the claim of waiver. Upon her retirement, Ms. Williams had to elect how her pension benefits would be paid. She could elect either a single life annuity or a joint and survivor annuity under which Mr. Williams would receive a percentage of the pension after her death, for the remainder of his life. Election of survivorship benefits would have reduced the monthly pension payments. In order to elect the higher paying, single life annuity, Ms. Williams was required to obtain the signed consent of Mr. Williams. A clear reading of the consent form indicates that it is not a waiver of all interests in the pension, but rather a waiver of survivor benefits.

{¶ 17} We next address the division of the pension. A pension acquired during the marriage is considered to be marital property and is subject to equitable division. *Sprankle v. Sprankle*, 87 Ohio App. 3d 129, 132, 621 N.E.2d 1310 (9th Dist. 1993); R.C.

3105.171(A)(3)(a). "A trial court has broad discretion when considering retirement benefits; flexibility is necessary for the court to make an equitable decision based upon factors relevant to the situation before it." *Id.* "When distributing retirement benefits in a divorce, a "trial court must apply its discretion based upon the circumstances of the case, the status of the parties, the nature, terms and conditions of the * * * retirement plan, and the reasonableness of the result." *Hoyt v. Hoyt*, 53 Ohio St.3d 177, 179, 559 N.E.2d 1292 (1990). Further, the trial court must attempt to accomplish two goals: (1) preserve the value of the retirement asset and (2) disentangle the parties' economic affairs to bring finality to the marriage. *Id.*

{¶ 18} Ohio courts have recognized several methods for the equitable distribution of a spousal interest in a pension fund. 46 Ohio Jurisprudence 3d, Family Law, Section 444. One such method is to "[d]etermine the present value of the fund, calculate the nonemployee spouse's proportionate share, and offset that amount with other marital assets or with a lump sum payment or installment payments from the employee spouse." *Id.*, citing *Sprankle* at 132.

{¶ 19} In this case, there is no dispute that the entire Assurant pension was earned during the marriage. Nor does Ms. Williams contest the use of the present value method for valuation. Instead, she challenges the use of her life expectancy, rather than that of Mr. Williams, in determining the present value of the pension.

{¶ 20} Carter Feltner, a CPA, testified on behalf of Mr. Williams. Ms. Williams stipulated to his qualifications as an expert. Feltner testified as to the method for calculating the present value of the pension. He further testified that because there was no survivor benefit provision in the pension, it was proper to utilize Ms. William's life

expectancy in the calculation. Ms. Williams did not present any testimony, expert or otherwise, to contest Feltner's calculations or conclusions.

{¶ 21} Given the evidence before the trial court, we cannot conclude that it abused its discretion in the division of the pension. The second assignment of error is overruled.

### IV. Attorney Fees

{¶ 22} Ms. Williams's third assignment of error is as follows:

THE TRIAL COURT ABUSED ITS DISCRETION BY AWARDING THE DEFENDANT HIS ATTORNEY FEES IN THEIR ENTIRETY.

{¶ 23} Ms. Williams contends that the award of attorney fees to Mr. Williams is not equitable. In support, she contends that the trial court made a finding that both parties caused delays in the litigation.

{¶ 24} A divorce court "may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable." R.C. 3105.73(A). In determining whether an award of fees is equitable, "the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate." *Id.* The decision whether to award attorney fees is within the trial court's sound discretion and will not be reversed absent an abuse of that discretion. *Janis v. Janis*, 2d Dist. Montgomery No. 23898, 2011-Ohio-3731, ¶ 78, citing *Kapadia v. Kapadia*, 8th Dist. Cuyahoga No. 94456, 2011–Ohio–2255, ¶ 93.

{¶ 25} It is true that the trial court found both parties displayed a lack of respect toward each other, counsel and the court. However, the trial court went on to note that

Ms. Williams was "obstructive, evasive and generally non-compliant through the course of this entire litigation. As mentioned previously, it was not until this Court reminded her of her burden of proof to establish her claimed separate property that she began to cooperate. This case took much longer in terms of discovery efforts and trial time that [sic] it ever should have all of which was a direct and proximate result of Ms. Williams' lack of cooperation."

{¶ 26} From our review of the transcript, we agree with the trial court that, while both parties were obstreperous, the matter was drawn out due to Ms. Williams' failure to cooperate. She clearly did not comply with discovery requests prior to the hearing, and she continued that pattern even after the hearing commenced. Indeed, we note that at the conclusion of the third day of trial, held on February 1, 2017, the trial court admonished Ms. Williams and her counsel to comply with the prior discovery requests. It appears from the record that Ms. Williams did not provide the discovery until the week of the next hearing which was conducted on March 20, 2017.

{¶ 27} While Ms. Williams contends that Mr. Williams, likewise, did not comply with discovery, we find no evidence to support such a claim. The record indicates that Mr. Williams was not in possession of any documentation regarding the parties' marital finances and property as all such evidence remained in the marital residence to which he did not have access.

{¶ 28} The parties were living on limited, fixed incomes consisting of Social Security benefits and pension benefits. Mr. Williams was 79 at the time of the hearings and Ms. Williams was 73. The trial court made an almost equal division of the parties'

marital assets with each party receiving a little over $100,000 in assets.[1]   The trial court noted that Ms. Williams had other "considerable assets accessible to her" from an inheritance.   The record shows that Ms. Williams received an inheritance of well over $500,000 during the marriage which was determined to be her separate property.   Thus, the trial court found it equitable for her to pay Mr. Williams' legal fees.

{¶ 29} A review of the record shows that both parties stipulated that the hourly rate, time spent, and total attorney fees of the other party were reasonable.   The hourly billing and total fees of both attorneys was submitted on the record.   We conclude that the award of attorney fees is supported by the trial court's finding that Ms. Williams caused Mr. Williams to incur unnecessary attorney fees.   We cannot say, based upon this record, that the trial court abused its discretion regarding the award of attorney fees.   Accordingly, the third assignment of error is overruled.

## V. Conclusion

{¶ 30} All of Ms. Williams' assignments of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

FROELICH, J. and HALL, J., concur.

---

[1] Ms. Williams received approximately $4,000 more in assets as she had pre-marital equity in the marital residence.

Copies mailed to:

Gregory K. Lind
Stacey R. Pavlatos
Hon. Thomas J. Capper